UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

UNITED STATES OF AMERICA,

      Plaintiff,

v.

JOSE ACUNA-PAYAN, and
BLAZ RIVERA-RODRIGUEZ,

      Defendants.
_____/

Case No. 1:05-cr-291

HON. GORDON J. QUIST

**OPINION**

    Defendants Jose Acuna-Payan ("Acuna") and Blaz Rivera-Rodriguez ("Rivera") were indicted for knowingly and intentionally possessing with intent to distribute five hundred grams or more of a mixture or substance containing cocaine. Acuna and Rivera filed motions to suppress. Acuna moves to suppress the cocaine seized from his car after a Michigan State Police Trooper stopped it, arguing that the Trooper did not have probable cause to stop his car and that his consent to the Trooper to search his car following the stop was a fruit of the unlawful detention. Rivera joins Acuna's motion to suppress. In addition, Rivera moves to suppress statements he made to officers while in custody, arguing that he did not voluntarily, knowingly, and intelligently waive his *Miranda* rights. For the following reasons, the Court will grant Defendants' motions to suppress.

**I. Findings of Fact**

    On December 11, 2005, Michigan State Police Trooper Ben Seal stopped a car driving eastbound on Interstate 94 in southwest Michigan. Trooper Seal stopped this car because he observed an object or ornament dangling from the vehicle's rear view mirror that he believed

constituted a vision obstruction in violation of Michigan law. The dangling ornament consisted of a crucifix attached to beads. Trooper Seal testified that a vision obstruction violation is part of his ticket book and that he frequently pulls vehicles over for vision obstructions. The vehicle Trooper Seal pulled over had Illinois license plates, which Trooper Seal noticed before pulling over the vehicle. After stopping the vehicle, Trooper Seal approached it and found Defendant Acuna in the driver's seat and Defendant Rivera in the passenger's seat. When asked what the purpose of his trip was, Acuna, in English, explained that he was driving from Chicago to Grand Rapids to visit his grandmother. Trooper Seal discovered at the scene that Rivera spoke only Spanish.

Both Acuna and Rivera provided Trooper Seal with Mexican drivers' licenses from the state of Durango. Trooper Seal noted that although the licenses were issued by the same Mexican state within ten months of each other, the licenses were of dissimilar format and layout. Suspecting that the licenses were fraudulent, Trooper Seal ran Acuna's and Rivera's names in the El Paso Information Center (EPIC) database, which, among other things, annotates all legitimate border crossings from Mexico into the United States. Because Trooper Seal found no information for either Acuna or Rivera in the database, he suspected they had illegally entered the country.

Trooper Seal then asked Acuna to step out of the car and asked him for permission to search it. Acuna consented. After obtaining Acuna's consent, Trooper Seal then directed Rivera to exit the car. Upon searching it, Trooper Seal discovered two kilograms of cocaine wrapped in individual bricks in a blue duffel bag on the car's back seat. Acuna and Rivera were then taken into custody and transported to the Bridgman State Police post.

After transporting Acuna and Rivera to the post, Trooper Seal attempted to interview Acuna. Acuna did not agree to speak with Trooper Seal. Trooper Seal then attempted to locate a Spanish-

English translator to speak with Rivera. Finding no translator at the Bridgman post, Trooper Seal arranged for Sergeant Fabian Suarez, a Spanish-English translator with the Michigan State Police, to interview Rivera by telephone. Sgt. Suarez drove to the post nearest his home (at Niles, Michigan) to conduct the telephone interview.

Sgt. Suarez began his interview by asking Rivera if he spoke only Spanish. Rivera replied that he did. Sgt. Suarez then told Rivera that he was asked to speak to him in reference to a traffic stop, but before he could proceed, he needed to advise him of his *Miranda* rights. Sgt. Suarez read Rivera his *Miranda* rights from a card pre-printed in Spanish. After reading each right, Sgt. Suarez paused to ask Rivera if he understood the right read to him. Rivera responded "si" (yes) every time. Trooper Seal, who was with Rivera during the telephone conversation, observed Rivera respond "si" several times at the beginning of the conversation.

During the interview with Sgt. Suarez, Rivera stated that Acuna was his cousin, and that Acuna had offered to pay Rivera to accompany him to Michigan. Rivera admitted knowing that drugs were in the car, but claimed no knowledge as to the source of the drugs or their intended recipient.

## II.  Conclusions of Law

### A.    Defendant Acuna's Motion to Suppress

Acuna moves to suppress the two kilograms of cocaine discovered in the blue duffel bag in the backseat of his car on the ground that Trooper Seal did not have probable cause to stop his vehicle. Trooper Seal explained that he stopped Acuna's vehicle because he believed that the beads and crucifix hanging from the vehicle's rear-view mirror constituted a vision obstruction in violation of Michigan law. Indeed, § 709 of the Michigan Vehicle Code prohibits a person from driving "a

motor vehicle with any . . . dangling ornament or other suspended object that obstructs the vision of the driver of the vehicle . . . ." M.C.L. § 257.709(1)(c). Section 709, however, also provides that the "section shall not apply to . . . [a] vehicle registered in another state . . . ." M.C.L. § 257.709(3)(d). It is undisputed that Acuna's vehicle had Illinois license plates. Moreover, although the government asserts that simply because a vehicle has out-of-state license plates does not conclusively establish that the vehicle is registered out-of-state, the government has offered no evidence indicating that there was any reason to believe that Acuna's vehicle was not registered in Illinois. In fact, Trooper Seal believed that the vehicle was registered in Illinois.

At the suppression hearing, Trooper Seal testified that he believes it to be a violation for any vehicle to drive in Michigan with a dangling ornament or other suspended object from the vehicle's rear-view mirror, regardless of where the vehicle is registered. What Trooper Seal subjectively believes the law to be, however, is irrelevant to the issue of whether probable cause exists to stop a vehicle for a traffic violation. *See Whren v. United States*, 517 U.S. 806, 813, 116 S. Ct. 1769, 1774 (1996) (holding that reasonableness of a stop does not depend upon the subjective motivations of a police officer). For the stop of a vehicle for a traffic violation to be justified, facts must exist such that an objectively reasonable officer would conclude that probable cause exists to believe that a traffic code violation has been committed. *Id.* In this case, an objectively reasonable officer would not have believed that the beads and crucifix hanging from Acuna's rear-view mirror was in violation of § 709 of the Michigan Vehicle Code where Acuna's vehicle had Illinois license plates, since § 709 does not apply to a "vehicle registered in another state . . . ." M.C.L. § 257.709(3)(c). Because probable cause did not exist to stop the vehicle, Acuna was unlawfully detained in violation of the Fourth Amendment. Moreover, Acuna's consent to Trooper Seal to search his vehicle is a

fruit of this unlawful detention.

The government argues that, even though Acuna's vehicle was not in violation of Michigan law, the Court should nonetheless not exclude the evidence in this case because Trooper Seal believed in good-faith (albeit mistakenly) that Acuna's vehicle was in violation of Michigan law. "Because Trooper Seal acted in good faith," the government maintains, "application of the exclusionary rule in this case would not necessarily result in appreciable deterrence of actual improper conduct." The Court disagrees.

The Supreme Court has explained that the purpose of the exclusionary rule is to deter unlawful police conduct. *United States v. Leon*, 468 U.S. 921, 919-920, 104 S. Ct. at 3405 (1984). Thus, the Court has recognized, evidence should be excluded only where an officer acted unreasonably in procuring the evidence in violation of the Fourth Amendment, for otherwise, if an officer's behavior were objectively reasonable, exclusion of evidence would not further the purpose of the exclusionary rule "in any appreciable way." *Id.* The Court noted that "[g]rounding the . . . [exclusionary rule] in objective reasonableness . . . retains the value of the exclusionary rule as an incentive for the law enforcement profession as a whole to conduct themselves in accord with the Fourth Amendment." *Id.* at n.20. Moreover, the Court explained, "[t]he objective standard . . . requires officers to have a reasonable knowledge of what the law prohibits." *Id.*

Since the good-faith exception turns upon the objective reasonableness of an officer's conduct, the fact that Trooper Seal in "good-faith" subjectively believed that Michigan law prohibits a dangling ornament or other suspended object regardless of the vehicle's state of registration is irrelevant to the application of the good-faith rule. The Court concludes that an objectively reasonable officer, who is presumed to know the law he is required to enforce, would know that

probable cause did not exist to find that the beads and crucifix dangling from the rear view mirror of Acuna's Illinois licensed and registered vehicle constituted a violation of § 709 of the Michigan Vehicle Code. Since Trooper Seal's conduct failed to meet the standard of objective reasonableness, application of the exclusionary rule here will further the purpose of the rule to deter objectively unreasonable conduct.

The Court's conclusion (that Trooper Seal's "good-faith" but mistaken belief that Defendant Acuna's vehicle was in violation of Michigan law does not save the evidence from being suppressed where an objectively reasonable officer would have concluded that probable cause did not exist to stop the vehicle) is supported by other courts that have addressed this issue. In *United States v. Lopez-Valdez*, a Texas Department of Public Safety trooper pulled over a vehicle because it had a hole in its taillight cover. 178 F.3d 282, 284-285 (5th Cir. 1999). The trooper believed, mistakenly, that a cracked taillight constituted a traffic infraction in Texas. *Id*. at 285, 288. The court noted that where the alleged traffic infraction that forms the basis for a stop in fact is not a violation of state law, then there is "no objective basis for probable cause justifying the stop." *Id*. at 288. Moreover, the court explained, the good-faith exception to the exclusionary rule did not save the evidence from suppression because "no well-trained Texas police officer could reasonably believe that . . . a cracked . . . taillight lens constituted a violation of traffic law." *Id*. at 299.

Similarly, in *United States v. Twilley*, 222 F.3d 1092, 1096, (9th Cir. 2000), the court suppressed evidence discovered from an officer's stop of a vehicle where the officer stopped the vehicle on the mistaken belief that it was in violation of California law. California law requires cars to display every license plate issued by California or any other jurisdiction within the United States. *Id*. at 1094. The officer stopped a vehicle with Michigan plates because it only had a rear license

plate, believing (incorrectly) that Michigan required two license plates – a rear and a front. *Id*. The Court noted that "[w]hile . . . [an] officer need not perfectly understand the law when he stops . . . [a] vehicle, his observation must give him an objective basis to believe that the vehicle violates the law." *Id*. at 1096. Because the officer did not have an objective basis to believe the vehicle he stopped was in violation of the law, the court concluded, the stop violated the Fourth Amendment. *Id*.; *see also*, *United States v. King*, 244 F.3d 736, 739-740 (9th Cir. 2001) (noting that an officer's good-faith but mistaken belief that a parking placard hanging from a vehicle's rear-view mirror violated a traffic ordinance did not justify a stop of the vehicle since the legal justification for the stop was not objectively grounded).

**B.      Defendant Rivera's Motion to Suppress**

Rivera joined Acuna's motion to suppress. The Court notes that, although Rivera was a passenger in Acuna's car and does not claim any ownership interest in the car, he nonetheless has standing to move to suppress the cocaine found in Acuna's car. This is so because Rivera has standing to assert that probable cause did not exist to stop the vehicle in which he was a passenger. *See Delaware v. Prouse*, 440 U.S. 648, 653, 99 S. Ct. 1391, 1396 (1978) (noting that each occupant in a vehicle has an interest in freedom from unauthorized seizures). Rivera may move to suppress the cocaine discovered in Acuna's car on the ground that the cocaine is a fruit of his unlawful seizure. *United States v. Dycus*, Nos. 04-5975, 04-5976, 2005 WL 2757618 (6th Cir. Oct. 25, 2005) (noting that a defendant, who was a passenger in a car that was searched, had standing to challenge, not the search of the vehicle directly, but the constitutionality of the initial stop, and, if the initial stop were unconstitutional, "then any resulting evidence that flow[ed] from that stop . . . [would] be suppressed"). For the reasons the Court will grant Acuna's motion to suppress from evidence the

7

cocaine discovered in his vehicle, the Court will grant Rivera's motion to suppress this evidence from being used against him.

Rivera also moves to suppress the statements he made to Sgt. Suarez on the ground that he did not voluntarily, knowingly, and intelligently waive his *Miranda* rights. The Court need not decide whether Rivera voluntarily waived his *Miranda* rights, for the Court concludes that the statements Rivera made must be suppressed as a fruit of his unlawful detention. It is well-established that "a confession obtained through custodial interrogation after an illegal arrest should be excluded unless intervening events break the causal connection between the illegal arrest and the confession so that the confession is sufficiently an act of free will to purge the primary taint." *Taylor v. Alabama*, 457 U.S. 687, 690 102 S. Ct. 2664, 2667 (1982) (internal quotation marks omitted); *see Dunaway v. New York*, 442 U.S. 200, 217, 99 S. Ct. 2248, 2259 (1979); *Brown v. Illinois*, 422 U.S. 590, 603-604, 95 S. Ct. 2254, 2261-2262 (1975). Moreover, the fact that an unlawfully detained defendant received his *Miranda* warnings before confessing "is not by itself sufficient to purge the taint of the illegal arrest." *Taylor*, 457 U.S. at 690, 102 S. Ct. at 2667; *Brown*, 422 U.S. at 603, 95 S. Ct. at 2261.

The Supreme Court has "identified several factors that should be considered in determining whether a confession has been purged of the taint of the illegal arrest: 'the temporal proximity of the arrest and the confession, the presence of intervening circumstances, and . . . the purpose and flagrancy of the official misconduct.'" *Taylor*, 457 U.S. at 690, 102 S. Ct. at 2667 (quoting *Brown*, 422 U.S. at 603-04, 95 S. Ct. at 2661). While the official misconduct in this case was not flagrant, the confession was made shortly after the unlawful detention, and there were no intervening circumstances between the unlawful detention and Defendant Rivera's confession. Because Rivera's

8

statements were obtained by "exploitation of the illegality of his arrest," and not "by means sufficiently distinguishable to be purged of the primary taint," Rivera's statements must be suppressed as a fruit of his unlawful detention. *See Wong Son v. United States*, 371 U.S. 471, 484, 487-488, 83 S. Ct. 407, 416, 417 (1963).

### III.  Conclusion

For the foregoing reasons, the Court will grant Defendants' motions to suppress.

An Order consistent with this Opinion will be entered.

Dated: May 23, 2006 /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE